2025 IL App (4th) 250527-U

NOS. 4-25-0527, 4-25-0528, 4-25-0529 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 20, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* An. C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|       Petitioner-Appellee, | ) | No. 24JA68 |
|       v.      (No. 4-25-0527) | ) | |
| Antonio C., | ) | |
|       Respondent-Appellant). | ) | |
| | ) | |
| *In re* Ar. C., a Minor | ) | No. 24JA69 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | |
|       v.      (No. 4-25-0528) | ) | |
| Antonio C., | ) | |
|       Respondent-Appellant). | ) | |
| | ) | |
| *In re* Am. C., a Minor | ) | No. 24JA70 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | |
|       v.      (No. 4-25-0529) | ) | Honorable |
| Antonio C., | ) | John C. Wooleyhan, |
|       Respondent-Appellant). | ) | Judge Presiding |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appointed counsel's motion to withdraw and affirmed the orders adjudicating respondent's children neglected and making them wards of the court.

¶ 2    Respondent, Antonio C., appeals orders adjudicating his children, An. C. (born in

2019), Ar. C. (born in 2020), and Am. C. (born in 2022), neglected and making them wards of the court. The children's mother, Sheana P.-G., is not a party to this appeal. Respondent's appointed counsel has moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), because there is no nonfrivolous issue to raise on respondent's behalf. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (explaining the procedure to withdraw pursuant to *Anders*). Respondent did not file a response to this motion, and the time to do so has passed. For the following reasons, we grant counsel's motion and affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4            On August 20, 2024, the State filed petitions alleging that respondent's children were abused or neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)). The State later withdrew the allegation implicating abuse and proceeded solely on a neglect theory. The State alleged that (1) respondent was a registered sex offender who police found at Sheana's home rather than at his registered address, (2) there were cannabis plants and material located in Sheana's home that were not secured to prevent the children from accessing them, and (3) Sheana reported that respondent threatened her with violence multiple times and damaged her property. Following a shelter care hearing on August 21, 2024, the trial court found there was probable cause for the State's petitions and transferred temporary custody of the children to the Illinois Department of Children and Family Services (DCFS).

¶ 5                              A. Adjudicatory Hearing

¶ 6            On February 20, 2025, the trial court held an adjudicatory hearing on the State's petitions. The State's evidence showed the following.

¶ 7            Respondent was required to register as a sex offender. On August 15, 2024, Officer

James Brown of the Quincy Police Department went to respondent's registered address in Quincy, Illinois. One of respondent's relatives informed Brown that respondent had not lived there "in quite some time." Based on information he received, Brown went to Sheana's address in Quincy, where he located Sheana and her three children.

¶ 8 Brown determined that Sheana had a warrant for her arrest, so he took her into custody. Brown searched Sheana's home with her consent and found 80 cannabis plants, most of which were located in the master bedroom inside two zipped grow tents that had no locks on them. Brown found other items associated with a cannabis-growing operation in the master bedroom, including a backpack sprayer, fans, thermometers, timers, crates of chemicals, and a drying plant hanging on the wall. On top of the smaller of the two tents, which Brown estimated was about four or five feet tall, there were loose cannabis material, more chemicals, and a "vape cart." Brown found additional cannabis plants on the floor in the home's laundry room. On some shelving above the washer and dryer, Brown found aluminum foil that contained cannabis material. In the home's kitchen, Brown found cannabis plants on top of the refrigerator and "loose plant material," starter cups, and "blunt material" on the counter. According to Brown, there was nothing preventing the children from gaining access to the home's master bedroom, laundry room, or kitchen.

¶ 9 Brown further testified that he found material that he believed to be "finished" cannabis inside the freezer of Sheana's kitchen. The State introduced a photograph of what Brown said depicted "the large bag of what appears to be dried cannabis in the freezer." Brown explained that he collected this evidence, submitted it to the Illinois State Police crime lab for analysis, then received a report from the lab sometime between September 13 and 18, 2024. Brown identified this report as People's exhibit No. 17. Sheana's counsel objected that this report was hearsay, and respondent's counsel added, "I would object to foundation as well." Specifically, respondent's

counsel maintained that Brown could not testify about what was in the report, as he did not create it and had no direct knowledge of its contents. The trial court allowed the exhibit into evidence, reasoning that the State laid a foundation and the court would "decide what weight, if any, to give" to the exhibit. The lab report states that the material at issue weighed 155.2 grams and was "Delta 9-Tetrahydrocannabinol[ ](Delta 9 THC)." Brown later testified that he personally "field tested" the material found in the freezer, though he did not specifically relate the results of that testing.

¶ 10      Brown further testified that Sheana told him that the tents belonged to respondent, who "had just brought them back from some other girl's house." Sheana related that respondent slept at her home "off and on," but frequently. Sheana also told Brown there was "ongoing" domestic violence in the home and that respondent had "struck her" before.

¶ 11      Edward Mason, a DCFS child protection specialist, spoke with Sheana at her home on August 19, 2024. Sheana told Mason that respondent was responsible for growing the cannabis. Although Sheana was aware of that operation, she denied participating in it or "using any of the product in the home." Sheana did not give Mason any indication as to how long the cannabis operation had been going on. Sheana reported to Mason being the victim of "multiple incidents of domestic violence," including situations in which respondent had damaged her door, punched her television, and struck her. The State introduced into evidence photographs showing damage to Sheana's door and television. Sheana denied being the perpetrator of domestic violence. She also denied that respondent was living in her home, though she said he "stayed there multiple days to watch the children while she was working."

¶ 12      Mason also spoke with respondent, who denied living at Sheana's home. However, respondent also related that Sheana had "kicked him out of the house on multiple occasions" and then kept his belongings. Respondent denied assaulting or battering Sheana. He told Mason about

- 4 -

one incident when Sheana had "ripped" one of the children from his arms.

¶ 13    Respondent presented no evidence at the adjudicatory hearing.

¶ 14    The trial court found that the State had proved by a preponderance of the evidence all the allegations in its petitions related to neglect. Accordingly, the court adjudicated the minors neglected. The court's written adjudicatory order indicates that the children's environment was injurious to their welfare based on "domestic violence between parents" and "Cannabis grow operation in home with children present."

¶ 15                    B. Dispositional Hearing

¶ 16    Reports filed in advance of the dispositional hearing showed that respondent initially refused to cooperate with caseworkers on any level. For example, he would not allow an inspection of his home, and he refused to sign consents to authorize caseworkers to make referrals for services or consult with his providers. In February 2025, respondent finally signed the necessary consents. He subsequently permitted a home inspection and commenced services related to parenting, mental health, and substance abuse. Despite those developments, DCFS personnel continued to describe respondent's cooperation as "minimal." For example, respondent did not participate in an integrated assessment and refused to sign his service plans. Respondent attended weekly supervised visitation with the children. However, DCFS personnel had concerns that respondent related information about the case to his children and said negative things about the foster parents.

¶ 17    Reports indicated that respondent was employed, though he provided no verification of employment. Respondent was recommended to engage in domestic violence services but had not started those. Respondent's caseworkers received information that respondent had previously completed two years of sex offender treatment and was deemed to present a low

risk of sexual harm to the community.

¶ 18    On May 22, 2025, the trial court held the dispositional hearing. The parties elected not to present evidence and relied solely on arguments based on the reports that were submitted. Rather than directly disputing that respondent was dispositionally unfit and the children should be made wards of the court, respondent's counsel seemingly limited his argument to requesting increased visitation:

"Your Honor, my client is working now and he is taking actual work with the caseworker and get[ting] ready to file the service plan and what we think is in the best interest of the child [*sic*] right now as far as my client *** is concerned that he get increased visitation with his children so he can be a part of their life. As you know, the case still does have a goal to have the children returned home at some point within 12 months.

So that would be our request, a release between now and three months from now at the next permanency hearing."

The court ruled that "[b]ased on all of the evidence and information that we have here today," the children would be made wards of the court and DCFS would be appointed as their guardian and custodian. The court set a goal for the minors to return home within 12 months and determined that both parents' visitation with the children would be supervised. The written dispositional order indicated that respondent was unfit due to "[e]nvironmental [n]eglect."

¶ 19    Respondent filed a timely notice of appeal in each child's case. We granted respondent's unopposed motion to consolidate the appeals.

¶ 20                                    II. ANALYSIS

¶ 21    In moving to withdraw, respondent's counsel identifies two potential issues for

appeal: (1) whether the trial court's neglect finding was improper because the court erroneously admitted People's exhibit No. 17 into evidence and (2) whether the court improperly ordered respondent's visitation with the children to be supervised when respondent requested increased visitation at the dispositional hearing. Counsel explains why those issues lack merit.

¶ 22 The Juvenile Court Act contains a two-step process for removing a minor from the custody of his or her parents and making the minor a ward of the court. *In re Z.L.*, 2021 IL 126931, ¶ 58. The first step is to hold an adjudicatory hearing to determine whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2024); *Z.L.*, 2021 IL 126931, ¶ 59. A court may find a minor neglected even if the parents are not both neglectful. See *Z.L.*, 2021 IL 126931, ¶ 59 (" 'The only question to be resolved at an adjudicatory hearing is whether or not a child is neglected, and not whether every parent is neglectful.' ") (quoting *In re Arthur H.*, 212 Ill. 2d 441, 467 (2004)). The State must prove its allegations by a preponderance of the evidence. *Z.L.*, 2021 IL 126931, ¶ 61.

¶ 23 If the court adjudicates the minor abused, neglected, or dependent, the second step is to hold a dispositional hearing to determine whether the minor should be made a ward of the court. 705 ILCS 405/2-21(2) (West 2024); *Z.L.*, 2021 IL 126931, ¶ 60. In making that determination, the court "may consider the acts and/or omissions of the parents." *Z.L.*, 2021 IL 126931, ¶ 60.

¶ 24 We will reverse a neglect finding only if it is against the manifest weight of the evidence, meaning that "the opposite conclusion is clearly evident." *Z.L.*, 2021 IL 126931, ¶ 61. We will reverse a dispositional order " 'only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order.' " *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41 (quoting *In re J.W.*, 386 Ill.

App. 3d 847, 856 (2008)).

¶ 25                              A. The Adjudication of Neglect

¶ 26        Respondent's counsel asserts that "[r]espondent could potentially challenge the findings of neglect at the adjudicatory hearing related to any determination that the plants or materials were cannabis, based on the trial court's admission of People's Exhibit 17." Specifically, counsel explains that this exhibit was inadmissible hearsay and lacked a proper foundation. Nevertheless, counsel maintains there is no basis to challenge the adjudicatory order, as other evidence supported the finding of neglect.

¶ 27        We agree with respondent's counsel that there is no nonfrivolous basis to challenge the neglect finding. The trial court adjudicated the children neglected because their environment was injurious to their welfare based on "domestic violence between parents" and a "Cannabis grow operation in home with children present." People's exhibit No. 17 was a lab report identifying the weight and chemical composition of a packaged substance that a police officer found in the freezer in Sheana's home. However, this exhibit was not the State's only evidence of cannabis in Sheana's home. Other evidence, to which respondent did not contemporaneously object, showed that respondent was growing 80 cannabis plants in the home. A police officer also found many other items in the home associated with growing cannabis. Reports in the record indicated that respondent has a medical cannabis card. However, even with a medical cannabis card, there is a five-plant-per-household limit on growing cannabis. 410 ILCS 705/10-5(b)(1) (West 2024). Additionally, any person growing cannabis must "take reasonable precautions to ensure the plants are secure from unauthorized access, including unauthorized access by a person under 21 years of age." 410 ILCS 705/10-5(b)(4) (West 2024). The police officer who observed Sheana's home testified that there was nothing preventing the children from gaining access to the rooms where

the cannabis plants and other items were located. Even without considering People's exhibit No. 17, the evidence overwhelmingly showed that the children lived in a home where respondent was growing cannabis illegally and storing it haphazardly.

¶ 28    The presence of domestic violence in the home further supported the trial court's neglect finding. Sheana reported that respondent struck her and damaged the home. Photographs depicting damage to a television and door corroborated Sheana's claim. Although the record does not reflect exactly when these domestic violence incidents occurred, Brown testified that Sheana "provided an overall statement explaining that there was ongoing domestic violence within the house, that [respondent] had struck her before." The evidence also showed that the children were not yet school-aged and were supervised either by respondent or Sheana. Thus, the evidence reasonably supports the conclusion that domestic violence was an ongoing problem in the household and the children would have been in the home when it occurred.

¶ 29    Given the presence of large quantities of accessible cannabis plants in the children's home and ongoing domestic violence, the trial court's finding of neglect was not against the manifest weight of the evidence, regardless of whether the court improperly admitted People's exhibit No. 17. Accordingly, we agree with respondent's counsel that there is no nonfrivolous basis to challenge the adjudicatory order.

¶ 30                    B. The Dispositional Order

¶ 31    Respondent's counsel also considered whether there would be any basis to challenge the dispositional order based on respondent's request for increased visitation. Respondent's counsel maintains that this issue lacks merit because (1) respondent never filed a written pleading or made an express oral motion pertaining to visitation and (2) the trial court had ample reason to order supervised visitation for respondent based on information received in

connection with the dispositional hearing.

¶ 32       We agree with respondent's counsel that there is no nonfrivolous basis to challenge the dispositional order. Notably, respondent did not seem to dispute that he was dispositionally unfit or that the children should be made wards of the court. Rather, respondent's trial counsel made a vague reference to respondent wanting increased visitation. However, the record shows that respondent cooperated only minimally with caseworkers. He did not participate in an integrated assessment, and he had not completed any services at the time of the dispositional hearing. Caseworkers also expressed concerns about respondent telling the children inappropriate things about the case. Under those circumstances, there is no basis in the record to challenge the dispositional order, including respondent's trial counsel's vague request for increased visitation.

¶ 33                          III. CONCLUSION

¶ 34       For the reasons stated, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 35       Affirmed.